IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-178-FL

| | | |
|---|---|---|
| SAVE OUR CHILDREN TRUTH COMMISSION, ET AL.; NATASHA LOACH; EMILY O'DELL; WILLIAM O'DELL; LORIBETH AARON; TINA BRANDON, ET AL.<br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES; JOE BIDEN; KAMALA HARRIS; XAVIER BECERRA; MERRICK B. GARLAND; GREG ABBOTT; DAN PATRICK; KEN PAXTON; JAIME MASTERS; BELL COUNTY; MCLENNAN COUNTY; WICHITA COUNTY, ET AL.,<br>*Defendants*. | § § § § § § § § § § § § § § § § § § | MOTION TO DISMISS<br>Fed. R. Civ. P. 12 |

## DEFENDANTS GREG ABBOTT'S AND KEN PAXTON'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### INTRODUCTION

Here, over 50 pro se individuals sued the United States President, Vice President, and Attorney General, various state governors, and an array of other state and county-level officials. While their 360-page Complaint is tough to decipher, Plaintiffs seem to allege (without meaningful support) that our Country's highest-ranking officials—along with state- and county-level judges and various other public and private individuals—are conspiring to remove children from their parents via juvenile court proceedings. In addition to seeking monetary damages, Plaintiffs ask this Court to enjoin *all* state-level child removals and to return *all* removed children to their "biological families."[1] It goes without saying

---
[1] ECF 1, ¶ 307; *id.* at pg. 154.

1

that forcing a child to stay in or return to an abusive environment is not in that child's best interests. And while Plaintiffs call themselves the "Save our Children Truth Commission," they appear to have given little thought to the harms that would befall children if this Court actually granted their requested relief.

This oversight aside, there are four main reasons why Plaintiffs' claims against Texas's Governor (Greg Abbott) and Attorney General (Ken Paxton) are fatally flawed.

First, Defendants Abbott and Paxton have no meaningful connection to North Carolina, and Plaintiffs allege no facts suggesting otherwise. Thus, Plaintiffs' claims fail for lack of personal jurisdiction.

Second, Plaintiffs lack standing to sue Defendants Abbott and Paxton. Plaintiffs appear to allege that their children were removed via local juvenile court proceedings. But they do not allege that Defendants Abbott and Paxton removed their children, ordered others to conduct such a removal, or otherwise instituted policies resulting in the challenged removals. Thus, Plaintiffs allege no facts plausibly showing that their injuries are fairly traceable to Governor Abbott's and Attorney General Paxton's conduct.

Third, Plaintiffs assert various common law claims against Defendants, which includes claims for "slavery & human trafficking," "medical malpractice," and breach of contract. These fail as they are clearly barred by sovereign immunity, as Texas has not waived its immunity for such claims.

Finally, Plaintiffs assert claims under 42 U.S.C. §§ 1983, 1985(3), and 1986. But these claims are insufficiently pled, largely because Plaintiffs never meaningfully explain what they think Defendants Abbott and Paxton did wrong or how these two Defendants were supposedly involved in the juvenile proceedings at issue here. Moreover, the underlying premise of Plaintiffs' lawsuit is simply absurd. It isn't remotely plausible that countless federal, state, and county officials, with no clear benefit to themselves, would cross party lines and conspire with each other to remove children

from their parents. Further, qualified immunity protects Defendants Abbott and Paxton against claims for monetary damages under these statutes. And Plaintiffs have no viable path for overcoming this robust defense.

**RELEVANT BACKGROUND**

The Plaintiffs are the Save Our Children Commission and over 50 pro se individuals.[2] Their suit names over 50 Defendants, which includes the United States Government, President Biden, various state governors, and other government officials.[3] Plaintiffs' sprawling 360-page Complaint is not a model of clarity. In it, Plaintiffs do not meaningfully explain what they believe most of the Defendants did wrong or how the Defendants are connected to the state of North Carolina.[4] Further, they lump various federal, state, and local actors together without explaining, for example, how the Texas-based Defendants plausibly violated the rights of the Illinois- or Maryland-based Plaintiffs.[5]

In short, Plaintiffs appear to believe, without meaningful support, that there is a vast nationwide conspiracy to remove children from their biological parents via juvenile court proceedings.[6] Per the Plaintiffs, this conspiracy infects the highest levels of our federal and state governments and extends all the way down to "judges, lawyers, police officers, social workers, health care professionals, and sometimes average citizens."[7]

Plaintiffs raise ten causes of action in this suit; some are asserted against all Defendants while others are specific to particular Defendants. Below is a summary of Plaintiffs' claims.

*The "§ 1983 Claim" (Plaintiffs' First and Fourth Causes of Action):*[8] Plaintiffs contend that all Defendants violated 42 U.S.C. § 1983 in some manner. Specifically, they claim that Defendants

---

[2] *See id.* at ¶¶ 2–53.
[3] *See id.* at ¶¶ 54–109.
[4] *See generally id.*
[5] *See generally id.*
[6] *See, e.g., id.* at ¶¶ 110–55.
[7] *Id.* at ¶ 120.
[8] *Id.* at ¶¶ 74–100, 131–83. Plaintiffs' factual allegations stop at paragraph 962, but their cause of action allegations then pick up at paragraph 74, seemingly due to a typographical error.

3

"manufacture[d] and conceal[ed] evidence and testimony" in juvenile court proceedings and otherwise conspired to take children away from their parents through such proceedings.[9]

*The "§ 1985 and § 1986 Claims" (Plaintiffs' Second and Third Causes of Action):*[10] Plaintiffs seek relief under 42 U.S.C. §§ 1985(3) and 1986, alleging that some or all of the Defendants unlawfully conspired against them to violate their equal protection rights, or otherwise failed to prevent such a violation. Specifically, Plaintiffs claim that "Defendants conspired to, and did act, agree and/or conspire to unlawfully examine, investigate, threaten, and make false reports resulting in the removal of the minor child from the custody of Plaintiff."[11]

*The "Common-Law Claims" (Plaintiffs' Fifth, Sixth, and Seventh Causes of Action):*[12] Plaintiffs assert various common law claims against most or all Defendants, which they categorize as follows: (1) intentional misrepresentation; (2) fraud upon the court; (3) honest services fraud; (4) mail fraud; (5) wire fraud resulting in peonage; (6) slavery and human trafficking; (7) legal malpractice; (8) medical malpractice; (9) breach of express and implied warranties; and (10) unconscionable contracts.

*The "Bivens Claim" (Plaintiffs' Eighth Cause of Action):*[13] Plaintiffs assert a Bivens claim against certain federal Defendants. Plaintiffs do not assert this claim against Defendants Abbott and Paxton.

*The "§ 1361 Claim" (Plaintiffs' Ninth Cause of Action):*[14] Plaintiffs assert a claim against certain federal Defendants under 28 U.S.C. § 1361. Plaintiffs do not assert this claim against Defendants Abbott and Paxton.

*The "Equitable Relief Claim" (Plaintiffs' Tenth Cause of Action):*[15] Plaintiffs seek injunctive and declaratory relief against the "United States; County Agencies; [and] Community Agencies."[16]

---

[9] *See, e.g., id.* at ¶ 90.
[10] *Id.* at ¶¶ 101–30.
[11] *Id.* at ¶ 110.
[12] *Id.* at ¶¶ 184–268.
[13] *Id.* at 269–73.
[14] *Id.* at ¶¶ 274–95.
[15] *Id.* at ¶¶ 296–327.
[16] *Id.* at pg. 150.

4

Specifically, Plaintiffs ask for: (1) a declaratory judgment "that the actions and/or inactions of the Defendants violate the rights of Plaintiffs";[17] (2) a nationwide injunction "on child removals" and a court order returning removed children to their "biological families immediately while the details of the case are being debated";[18] and (3) a nationwide injunction "ordering the Defendants to restore and enforce Plaintiffs' rights to have custody of their children and to stop oppressing families and detaining their children under the guise of child welfare."[19]

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction, which includes dismissals based on Article III standing and a government defendant's sovereign immunity.[20] In a facial 12(b)(1) challenge, the question is whether the plaintiff alleged sufficient facts, which are taken as true, to invoke the court's subject matter jurisdiction.[21]

Fed. R. Civ. P. 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. The plaintiff generally bears the burden of making a prima facie showing of personal jurisdiction.[22]

Fed. R. Civ. P. 12(b)(6) governs motions to dismiss for failure to state a claim. Such a motion hinges on whether the plaintiff pled a "plausible" (as opposed to just a "possible") claim for relief—*i.e.*, whether the plaintiff pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]

---

[17] *Id.* at ¶ 298.
[18] *Id.* at ¶¶ 307–08.
[19] *Id.* at pg. 154.
[20] *See, e.g.*, *Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 360–61 (4th Cir. 2020); *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2011).
[21] *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).
[22] *See Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

## ARGUMENT

**I.    This Court Lacks Personal Jurisdiction Over Defendants Abbott and Paxton.**

For a district court to exercise personal jurisdiction over a defendant, that defendant must have sufficient "minimum contacts" with the forum state.[24] To satisfy the minimum contacts test, the defendant must have "'purposefully directed' his activities at residents of the forum," and the litigation must "result[] from alleged injuries that arise out of or relate to those activities."[25] "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just."[26]

Here, Plaintiffs assert no facts suggesting that Governor Abbott and Attorney General Paxton purposely directed their activities to North Carolina residents, nor do their claims arise from any such phantom activities. Indeed, Plaintiffs' grievances mainly stem from how state courts and other local authorities handle child removals.[27] Logically, Texas's Governor and Attorney General have no meaningful connection to how North Carolina, for instance, processes child removals. Thus, Plaintiffs claims against Governor Abbott and Attorney General Paxton fail for lack of personal jurisdiction.

**II.    Plaintiffs' Claims Against Defendants Abbott and Paxton Fail for Lack of Standing.**

To have Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[28] Defendants Abbott and Paxton did not remove Plaintiffs' children, order others to conduct such removals, or institute policies resulting in these removals. Thus, Plaintiffs' claims against Defendants Abbott and Paxton fail for lack of standing, as they cannot fairly

---

[24] *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).
[25] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations omitted).
[26] *Consulting Engineers Corp.*, 561 F.3d at 277–78 (quotations omitted).
[27] *See, e.g.*, ECF 1, ¶¶ 110–55.
[28] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

6

trace their injuries to the challenged conduct of these two Defendants. Further, Plaintiffs do not suggest that Defendants Abbott and Paxton have the authority to reverse a lower court's decision to remove a child from his or her parents or otherwise unilaterally modify state laws governing child removals. Thus, Plaintiffs' claims for equitable relief against Defendants Abbott and Paxton also fail on redressability grounds, as a court order against these officials will not redress Plaintiffs' injuries.

### III. Plaintiffs' Common Law Claims are Barred by Defendants Abbott's and Paxton's Sovereign Immunity.

"[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it."[29] Congress has not abrogated Texas's immunity for common law claims.[30] And the limited immunity waiver found in the Texas Tort Claims Act doesn't cover Plaintiffs' alleged common law claims,[31] or any common law claims filed in federal court for that matter.[32] Thus, Plaintiffs' common law claims against Defendants Abbott and Paxton are barred by sovereign immunity.

### IV. Plaintiffs' §§ 1983, 1985(3), and 1986 Claims Against Defendants Abbott and Paxton are Barred by Qualified Immunity and are Otherwise Insufficiently Pled.

Plaintiffs' civil rights claims against Defendants Abbott and Paxton, brought under 42 U.S.C. §§ 1983, 1985(3), and 1986, are barred by qualified immunity and insufficiently pled for the reasons below.

*Plaintiffs' § 1983 Claim:* To survive dismissal, a § 1983 plaintiff must allege facts showing that the defendant was personally involved in the constitutional deprivation at issue.[33] Here, Plaintiffs allege no facts suggesting that Defendants Abbott and Paxton were personally involved in the alleged

---

[29] *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019).
[30] *See, e.g.*, *Tolliver v. Prairie View A&M, Univ.*, No. CV H-18-1192, 2018 WL 4701571, at *3 (S.D. Tex. Oct. 1, 2018).
[31] *See* Tex. Civ. Prac. & Rem. Code § 101.021.
[32] *See id.* at 101.102; *see also O'Rourke v. United States*, 298 F. Supp. 2d 531, 536 (E.D. Tex. 2004) ("While it is true that the Texas Tort Claims Act constitutes a limited waiver of sovereign immunity for certain torts, the Texas legislature has mandated that suits brought under the Texas Tort Claims Act must be brought in Texas state courts.").
[33] *See, e.g.*, *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990).

7

removals of their children. Thus, Plaintiffs failed to plausibly allege a § 1983 claim against these two Defendants.

*Plaintiffs' § 1985(3) Claim:* To plead a viable § 1985(3) claim, a plaintiff must allege:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.[34]

Here, Plaintiffs' § 1985(3) allegations are insufficient on many of these elements. Plaintiffs did not allege a viable "conspiracy," as they assert no plausible facts suggesting that Defendants Abbott and Paxton had a "meeting of the minds" with the other Defendants to violate Plaintiffs' constitutional rights,[35] or that any Defendants committed an "overt act" towards such a conspiracy. Plaintiffs do not meaningfully explain what they think Defendants Abbott and Paxton did wrong, much less allege facts showing that these Defendants were motivated by "invidious[] discriminatory animus." Further, Plaintiffs do not allege that they belong to a protected class, which itself warrants dismissal of their § 1985(3) claim.[36] Put simply, Plaintiffs' § 1985(3) allegations are too conclusory to survive this motion to dismiss.

*Plaintiffs' § 1986 Claim:* 42 U.S.C. § 1986 provides a cause of action against a party who has knowledge of a § 1985-based conspiracy and fails to stop it. However, "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."[37] Plaintiffs did not assert a viable § 1985 claim against Defendants Abbott and Paxton, so their § 1986 claim necessarily fails.

*Qualified Immunity:* Qualified immunity is the "norm" when government officials are sued in their individual capacities for damages,[38] and it applies to civil rights statutes such as 42 U.S.C. §§ 1983,

---

[34] *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995).
[35] *See id.* at 1377.
[36] *See, e.g.*, *Ballard v. Hickory Springs Mfg. Co.*, No. 516CV00137RLVDCK, 2017 WL 474102, at *2 (W.D.N.C. Feb. 3, 2017).
[37] *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985).
[38] *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

8

1985, and 1986.[39] To overcome a government official's qualified immunity, the plaintiff must show that the official violated the plaintiff's clearly established right—*i.e.*, a right that was sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right."[40] Plaintiffs will need to point to significant caselaw showing that Defendants Abbott's and Paxton's particular conduct at issue violated their clearly established rights.[41] Plaintiffs, who never meaningfully explain what they believe Defendants Abbott and Paxton did wrong, will not be able to make this showing.

## CONCLUSION

For the reasons set forth above, Defendants Abbott and Paxton ask this Court to dismiss all claims asserted against them with prejudice.

This 19th day of December 2022          Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER HILTON
Chief, General Litigation Division

*/s/ Todd Dickerson*
TODD DICKERSON
Texas Bar No. 24118368
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station

---

[39] *See, e.g., Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (applying qualified immunity to a 42 U.S.C. § 1985(3) claim); *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (applying qualified immunity to a 42 U.S.C. § 1983 claim).
[40] *Mullenix*, 577 U.S. at 11–12.
[41] *See, e.g., Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).

9

Austin, Texas 78711-2548
TEL: (512) 463-2120 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov
**ATTORNEYS FOR DEFENDANTS**
**GREG ABBOTT AND KEN PAXTON**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion has been served on all pro se plaintiffs via U.S. Mail and to counsel by electronic notification through ECF by the United States District Court, Eastern District of North Carolina, Southern Division, on December 19, 2022.

*/s/ Todd Dickerson*
TODD DICKERSON
Assistant Attorney General